IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JORGE R.C.¹,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil No. 22-1512 (GLS) |

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's denial of his application for disability insurance benefits. Docket No. 3. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 15. The Commissioner opposed. Docket No. 19. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c). Docket No. 7. After careful consideration of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **AFFIRMED.**

**I.      Procedural Background**

Plaintiff worked as a security guard from 2003-2018. Tr. 35, 65-66, 1392.² Plaintiff filed an application for disability insurance benefits claiming that, as of February 1, 2018, the following condition limited his ability to work: colon cancer, stage 3. Tr. 62, 1190-91, 1383. The application was denied initially and upon reconsideration. Tr. 1190-1220. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on February 18, 2021, a hearing was held via telephone before ALJ Ángel Viera-Vargas. Tr. 62-74. Plaintiff testified and was represented by counsel. Id. Vocational expert María de León-Curet testified at the hearing. Id. On June 10, 2021, the ALJ held

---

¹        Plaintiff's last name is omitted for privacy reasons.

²        "Tr." refers to the transcript of the record of proceedings.

a supplemental hearing via telephone. Tr. 45-61. Plaintiff was present as well as Dr. Jorge Hernández-Denton, a gastroenterologist and impartial medical expert, and Ariel Cintrón-Antommarchi, a vocational expert. Id. The ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of February 1, 2018, through December 31, 2020, the last date insured. Tr. 25. Plaintiff asked the Appeals Council to review but the request was denied on September 4, 2022 (Tr. 1-5), rendering the Commissioner's decision the final decision for review by this Court. On October 25, 2022, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 3, 15, 19.

## II. Legal Framework

### A. Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to

preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

**B.      Standard of Review**

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based in the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence.

Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir.1987).

### III.   Discussion

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2018, the alleged onset of disability. Tr. 25. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): lumbar degenerative disc disease, bilateral Carpal Tunnel Syndrome, cancer of the rectum, a major depressive disorder, and post-traumatic stress disorder ("PTSD"). Id. The ALJ further found that Plaintiff had several impairments that were not severe because they did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 25-26. The ALJ classified Plaintiff's lumbar sprain, arterial hypertension, hyperlipidemia, and obesity as non-severe impairments. Tr. 26. The non-severe impairments were accounted for along with Plaintiff's severe impairments in determining his RFC. Tr. 24.

At the third step of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 26. The ALJ concluded that the "Paragraph B" criteria were not met because Plaintiff's mental impairments did not result in at least one extreme or two marked limitations in a broad area of functioning. Tr. 26-28. Having concluded step three of the analysis, the ALJ proceeded to determine Plaintiff's RFC. Tr. 28. The ALJ stated that, in formulating the RFC, he had to consider all impairments, including those that were non-severe (Tr. 24), and that his findings regarding Plaintiff's mental functioning were also considered. The ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. 404.1567(b), and had the capacity to perform the following tasks:

> claimant could lift/carry 20 pounds occasionally and 10 pounds frequently and sit, stand and walk for six hours. Claimant could push/pull as much as []he could lift/carry. He could frequently operate hand controls with both

hands. claimant could frequently reach overhead to the left and to the right. for all other reaching, he could reach frequently to the left and to the right. [Claimant] could engage in frequent handling, fingering and feeling with both hands. He could frequently climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. Claimant could frequently balance, stoop, kneel, and crouch and could occasionally crawl. He could frequently be exposed to moving mechanical parts and could frequently operate a motor vehicle. [Claimant] was able to perform simple work-related decisions and could frequently interact with supervisors and coworkers and occasionally with the public. He was able to make simple work-related decisions.
Tr. 28.

After concluding the RFC analysis, the ALJ deemed that Plaintiff could successfully adjust to other work that existed in significant numbers in the national economy, such as a router, laboratory sample carrier, and laundry folder. Tr. 35-36. The ALJ held that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 37.

### A.    Plaintiff's Allegations of Error

Plaintiff moves to reverse the Commissioner's decision on the following grounds: (1) the ALJ's failure to consider the report of Dr. Carmen Ortiz, the consultative examiner, (2) the ALJ improperly disregarded Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms, (3) the ALJ's failure to assess Plaintiff's obesity pursuant to Social Security Regulation ("SSR") 02-1p,[3] and (4) the ALJ's mental RFC determination was not based on substantial evidence. Docket No. 15. The Court finds no error.

### 1.    Consultative Examination

Plaintiff questions the accuracy of the RCF by arguing that the ALJ failed to assess the persuasiveness of Dr. Ortiz's consultive examination, especially her notes on Plaintiff's symptoms of abdominal discomfort and diarrhea. Docket No. 15 at p. 13-16. The Commissioner argues that Dr. Ortiz's report was not a medical opinion pursuant to 20 C.F.R. § 404.1513(a)(2), as it did not assess claimant's abilities and limitations. Docket No. 19 at pp. 4-5. In any event, the Commissioner maintains that the ALJ assessed Dr. Ortiz's notes given that Dr. Hernández-Denton discussed Dr. Ortiz's report when he testified as a medical expert at the hearing before the ALJ. Id. at pp. 5-6.

---

[3]    Plaintiff's briefs cites to SSR 02-1p. However, said SSR was replaced by SSR- 19-2p effective May 20, 2019.

Because the Commissioner alleges that Dr. Ortiz's report is not a medical opinion, the Court addresses this matter first. Pursuant to 20 C.F.R. § 404.1513(a)(2):

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

On October 10, 2018, Dr. Ortiz performed a physical examination of Plaintiff. Tr. 1735-47. In her report, Dr. Ortiz noted that Plaintiff was alert, oriented, and cooperative. Tr. 1738. He referred "constant abdominal discomfort and diarrhea," and took Protonix 40MG, Imodium 2MG, and Intestinex 680MG. Tr. 1735-36. No side effects were reported. Id. At the end of her evaluation, Dr. Ortiz discussed Plaintiff's colorectal cancer and noted that Plaintiff "refers to constant abdominal discomfort and diarrhea" as well as bowel sounds. Tr. 1741. The consultative examiner, however, did not make findings as to the effect of Plaintiff's impairments or as to whether he had any limitations or restrictions resulting from such impairments. As such, Dr. Ortiz's report did not meet the statutory definition of a medical opinion. And the ALJ did not have to consider its persuasiveness. See Coffman v. Comm'r of Soc. Sec. Admin., 2020 WL 7033962, at *2 (W.D. Mo. Nov. 30, 2020) (the ALJ properly determined that the consultative examiner's statements were not a medical opinion as they did not provide any specific opinions regarding the claimant's degree of limitation).

Nevertheless, the ALJ did consider Dr. Ortiz's report along with other relevant evidence. The ALJ considered Dr. Ortiz's physical examination in the RFC assessment. Tr. 30. The ALJ noted that Plaintiff presented tenderness at the trapezius, left knee tenderness, positive Tinel's test bilaterally, and diminished muscular strength in both hands. Id. The ALJ also accounted for Plaintiff's normal sensory and reflex systems. Id. The ALJ also referenced Dr. Ortiz's notes on

Plaintiff's physical examinations. Id. The ALJ also mentioned Dr. Ortiz's notes on Plaintiff's abdominal discomfort when he discussed Dr. Hernández-Denton's testimony. Tr. 31. The ALJ considered Dr. Hernández-Denton's assessment of Dr. Ortiz's consultative examination and that Dr. Cruz's report did not consider Plaintiff's fecal incontinence as a problem. Tr. 31, 55. Because the ALJ did consider Dr. Ortiz's notes, the ALJ's decision is not to be disturbed. See e.g., Malaney v. Berryhill, 20178 WL 2537226, at *9 (D. Me. June 11, 2017) (claimant not entitled to remand when the ALJ relied on opinions of agency non-examining consultants who considered the evidence the claimant contended was erroneously assessed). Furthermore, the Court will not reweigh the evidence already evaluated by the ALJ. See Olivera-Bahamundi v. Comm'r of Social Sec., 2021 WL 1177339, at *6 (D.P.R. Mar. 29, 2021) (the court held that it would not look further into the opinion rendered by the consultative examiner because it would be impermissibly reweighing the evidence already evaluated by the ALJ); Evangelista v. Sec. of Health and Human Servs., 826 F.2d 136, 144 (1st Cir. 1997).

### 2. Plaintiff's Statements

Plaintiff next posits that the ALJ erred in disregarding his statements concerning the "intensity, persistence, and limiting effects" of his symptoms of fecal incontinence and pain as a result thereof, which he communicated to several doctors. Docket No. 15 at pp. 15-16, 18. The Court is unpersuaded. The ALJ evaluated the extent to which Plaintiff's statements where reasonably consistent with evidence in the record but ultimately found that the statements were not entirely consistent with the medical evidence before him. Tr. 29-34.

An ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 82 Fed. Reg. 49464 (Oct. 25, 2017). Moreover, SSR 16–3p provides that, in conducting that inquiry, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. An ALJ "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16–3p, 82 Fed. Reg. at 49465.

Plaintiff testified at the hearing before the ALJ regarding his symptoms of urinary and fecal incontinence post-surgery. Tr. 29, 69-71. He further testified that he experienced a burning sensation and pain in the area, used diapers, and could not drive. Id. During the ALJ's supplemental hearing, medical expert Dr. Hernández-Denton further assessed Plaintiff's impairments, including his fecal incontinence. Tr. 48-55. The ALJ found Dr. Hernández-Denton's opinion "highly persuasive," given that such impairment related to Dr. Hernández-Denton's subspecialty, gastroenterology. Tr. 34. Dr. Hernández-Denton recounted Plaintiff's cancer diagnosis, surgery, and recovery process. Tr. 49. He noted that Plaintiff's oncologist, who Dr. Hernández-Denton considered "one of the most important doctors," reported, months after surgery, that Plaintiff was fully active, able to carry all pre-disease performance without restrictions. Tr. 31, 49-50. Follow-up examinations were conducted, and no notes referred to fecal incontinency. Tr. 51-54, 690, 700, 710, 2197, 2207, 2696, 2686. Dr. Hernández-Denton suggested that the ALJ ask Plaintiff's counsel for additional evidence of fecal incontinence. Plaintiff's counsel informed that there was no additional evidence "in the periods that we're discussing." Tr. 54.

In his decision, the ALJ cited to Dr. Nelson Matos-Fernández, Plaintiff's oncologist, and Dr. Carlos-Domínguez Miranda, Plaintiff's family medicine specialist. On August 30, 2019, Dr. Matos-Fernández evaluated Plaintiff and reported Plaintiff as fully active, able to carry on all pre-disease performance without restriction. Plaintiff did not report abdominal pain, diarrhea, or incontinence. Tr. 29, 730-31. The same findings were reported by Dr. Domínguez-Miranda in a subsequent evaluation report. Tr. 2700, 2704. On June 19, 2018, Dr. Domínguez-Miranda evaluated Plaintiff and noted that Plaintiff was considered "independent" when engaging in activities of daily living, such as using the toilet and having voluntary control of urinary and fecal discharge. Tr. 1619. Dr. Domínguez-Miranda subsequently evaluated Plaintiff during 2019 and 2020 and reported the same findings. Tr. 690, 700, 710, 2197, 2207, 2696, 2686. Although Plaintiff points out that the ALJ did not consider assessment notes from Dr. Ortiz, Dr. Pedro Castaing-Lespier, and the psychiatric hospital (Tr. 806, 1741, 1776), the ALJ need not discuss every piece of evidence he considers in making his determination. See NLRB v. Beverly Enterprises-Mass., 174 F.3d 13, 26 (1st Cir. 1999) (the ALJ is not required to discuss all the evidence to show that she considered it). The Court is satisfied that the ALJ did not merely disregard Plaintiff's statements of his symptoms. He considered those statements but ultimately found them to be inconsistent with the objective medical evidence in the record. Tr. 29. No more was required.

Plaintiff urges the Court to follow Shelley C. v. Comm'r of Social Sec., 61 F.4th 341 (4th Cir. 2023). Docket No. 15 at pp. 17-18. The Fourth Circuit held that the ALJ could not dismiss the claimant's subjective complaints based entirely upon the belief that they were not corroborated by the record's medical evidence. Shelley C., 61 F.4th at 360. It relied on Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006) to state that "[b]ecause pain is not readily susceptible of objective proof …, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Shelley C., 61 F.4th at 360. Hines, however, explained that although a claimant does not need medical evidence to substantiate his or her pain symptoms,

> [t]hat is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his or] her ability to work. They most certainly are. Although a claimant's allegations about [his or] her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evince of the underlying impediment[.] Hines, 453 F.3d at 565 n.3 (quoting Craig v. Chater, 76 F.3d 585, 5954 (4th Cir. 1996)).

The ALJ properly considered Plaintiff's subjective statements and reached a decision that is supported by substantial evidence in the record. See Sacilowski v. Saul, 959 F.3d 431, 441 (1st Cir. 2020) (the ALJ may disregard claimant's allegations where there is direct evidence to rebut claimant's testimony and where claimant's credibility could be questioned); Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (finding that an ALJ's decision to discredit testimony "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]"). The Court will not disturb the ALJ's finding.

### 3. The ALJ's Failure to Consider Plaintiff's Obesity

Plaintiff next claims that the ALJ failed to consider his obesity, in combination with his other impairments, in formulating the RFC. Docket No. 15 at p.19. The Commissioner takes issue as Plaintiff failed to raise his obesity impairment at the administrative level and there is no evidence of the impact of obesity on Plaintiff's impairments. Docket No. 19 at p. 10.

If a claimant fails to raise an impairment, such as obesity, at the administrative level, "the ALJ is not obligated to consider that impairment." Feliciano Rivera v. Comm'r of Social Sec., 2022 WL 702416, at *4 (D.P.R. Mar. 9, 2022). The failure to do so could be dispositive of the

claimant's disability claim, as the ALJ has no obligation to consider a claim that was not presented at the time of the application for benefits. Street v. Barnhart, 133 Fed. Appx. 621, 627 (11th Cir. 2005). See also Breath v. Colvin, 2015 WL 5569020, at *5 (W.D. Okla. Aug. 26, 2015) ("Moreover, even if the ALJ's analysis was not expressed in compliance with SSR 02-1p, the ALJ was under no affirmative duty to consider obesity given that Plaintiff did not claim it as a disabling impairment."). An examination of the record shows that Plaintiff did not mention obesity in his initial disability report of April 13, 2018 (Tr. 1413), his function report from June 30, 2018 (Tr. 85-92), or in his disability report for his appeal on January 2, 2019 (Tr. 1441-49). Moreover, the issue of Plaintiff's obesity was not raised at the ALJ hearing except when medical expert Dr. Hernández-Denton noted Plaintiff's weight patterns. Tr. 55. Nothing else was said regarding obesity. The ALJ had no duty to investigate and consider an impairment which the Plaintiff did not allege at the administrative level.

Notwithstanding the foregoing, the Court considers Plaintiff's allegation regarding obesity. It is on the claimant to proffer evidence at the first four steps of the sequential process. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). As such, the ALJ will only consider impairments that the claimant says he or she has or those about which the ALJ receives evidence. 20 C.F.R. § 404.1512(a)(1). Per SSR 19-2p, the ALJ "will not use a diagnosis or a statement of symptoms to establish the existence of" obesity as a Medically Determined Impairment ("MDI"). SSR 19-2p, 2019 WL 2374222, at *3. Instead, the ALJ will consider the claimant's weight over time. Id. The claimant will have an MDI of obesity only if his or her weight, measured weight size, or body mass index shows a consistent pattern of obesity. Id. Here, the ALJ found that Plaintiff's weight showed a pattern of obesity. Tr. 25 (ref. to tr. 1528, 1532-33, 1597, 1610-11, 1628, 1637, 1646, 1674, 1736-37, 1773, 1775, 1779, 1781, 1783, 1854-1874, 2707, 2714, 2721, 2728). The ALJ classified Plaintiff's obesity as non-severe. Tr. 26.

Although the ALJ will consider any functional limitations in the claimant's ability to engage in basic work activities resulting from obesity and any other impairment, the ALJ "will not make general assumptions about the severity or functional effects of obesity with another impairments(s)." SSR 19-2p, 2019 WL 2374222, at *2-3. Obesity, in combination with another impairment(s), may or may not increase the severity or functional limitations of the impairment. Id. The ALJ considers the evidence in the record. Id. As such, "the functional limitations such obesity and other impairments cause must be shown in the record. In the absence of such evidence,

an ALJ's failure to address a claimant's obesity is harmless error." Feliciano Rivera v. Comm'r of Social Sec., 2022 WL 702416, at *4 (D.P.R. Mar. 9, 2022) (quoting Hagigeorges v. Astrue, 2012 WL 5334771, at *13 (D. Mass. Oct. 25, 2012)). See also Romero v. Astrue, 242 Fed. Appx. 536, 542 (10th Cir. 2007) ("Although her physicians included obesity as a diagnosis, none of the medical evidence identified any specific restriction on her ability to work attributable to obesity.").

The ALJ noted that the record lacked evidence to directly attribute Plaintiff's obesity to a specific medically determined condition or that it presented an adverse impact on Plaintiff's other Medically Determined Impairments ("MDIs"). Id. Plaintiff argues that the ALJ should have provided a "broader evaluation of the specific limitations related to [his] obesity, such as the effect on his postural limitations, environmental restrictions, ability to ambulate, and any other applicable limitations[.]" Docket No. 15 at p. 19. But Plaintiff does not point to any evidence of a connection between Plaintiff's obesity and any functional limitation. See Feliciano-Rivera, 2022 WL 702416, at *5 (plaintiff should cite to evidence that allows the ALJ to make a connection between obesity and physical limitations).[4] Any failure by the ALJ to discuss Plaintiff's obesity is harmless. See id. ("Because no evidence specifically cited in the record addresses the functional effects of Plaintiff's obesity combined with his other impairments, including no testimony at the hearing before the ALJ, any such failure to discuss Plaintiff's obesity … would constitute harmless error.").

### 4. Mental RFC

Plaintiff's next argues that the ALJ erroneously determined that he could "perform simple work-related decisions and could frequently interact with supervisors and coworkers and occasionally with the public" despite evidence of a severe depressive disorder and anxiety disorder with PTSD. Docket No. 15 at p. 20. The Commissioner counters that the ALJ's assessment was supported by substantial evidence in the record. The Court agrees.

The ALJ did consider Plaintiff's treatment history when determining that his depression and anxiety with PTSD were severe impairments. Tr. 26-27 (ref. to Tr. 85, 203, 855, 932, 974, 1181, 1735, 1773, 2677). However, categorizing an impairment as "severe" at step two of the sequential analysis does not automatically establish a functional limitation to prevent work-related activities. Mercado-Acosta v. Comm'r of Soc. Sec., 2021 WL 4352792, at *4 (D.P.R. Sept. 24,

---

[4] The Court acknowledges that Dr. Hernández-Denton stated at the hearing that Plaintiff was obese. Dr. Hernández-Denton could not affirm, as of June 10, 2021, that Plaintiff continued to be obese. Tr. 55. And Dr. Hernández-Denton did not identify any area where Plaintiff was functionally limited because of a combination of his obesity with his other impairments.

2021); Padilla-Irizarry v. Colvin, 2017 WL 87016, at 83 (D.P.R. Jan. 10, 2017); Irizarry-Sánchez v. Comm'r of Soc. Sec., 253 F.Supp.2d 216, 219 (D.P.R. Mar. 31, 2003) ("The mere existence of mental disorders is insufficient to establish disability absent a showing of a related functional loss."). The ALJ's mental RFC determination did account for mental functioning limitations.

When formulating Plaintiff's RFC, the ALJ based his determination on all relevant evidence, including Plaintiff's medical record, medical opinions, and his description of his limitations. See Vázquez-Velázquez v. Comm'r of Soc. Sec., 2021 WL 9275723 at, *5 (D.P.R. Sept. 23, 2021); 20 C.F.R. §§ 404.1545, 404.1546. The ALJ considered the assessment of Dr. Pedro Castaing-Lespier, Plaintiff's treating psychiatrist since 2018. Tr. 32; Docket No. 15 at p. 10. Dr. Castaing-Lespier diagnosed Plaintiff with major depressive disorder and PTSD. Tr. 1773-77. Dr. Castaing-Lespier's evaluations consistently show that Plaintiff was anxious with a sad mood and affect. Tr. 32, 33, 1773-75, 1781, 1783-84, 1787-90, 1797-98, 1807-08, 1819-20, 1825-26, 2326-27, 2334-35, 2348-49, 2361-62, 2724-25, 2738-39, 2745-46. Nevertheless, the ALJ noted that Dr. Castaing-Lespier also found that Plaintiff was well groomed, calm, cooperative, fully oriented, and alert and had a coherent, logical, and relevant thought process. Id. In November 2019, Dr. Castaing-Lespier noted that Plaintiff was experiencing increased anxiety in crowded places. Tr. 1829. As of December 18, 2020, Dr. Casting-Lespier noted that Plaintiff had "improvement in affective symptoms" and discussed treatment goals with good compliance. Tr. 2746.

The ALJ also referenced the findings of Plaintiff's treating psychologist, Dr. Héctor Marrero. Tr. 32. Dr. Marrero diagnosed Plaintiff with depression and anxiety with PTSD. Tr. 567, 576, 857, 858, 930-31, 974-77, 979-80, 1181-82. Dr. Marrero's progress notes reflected that Plaintiff had a depressed and anxious mood. Dr. Marrero also noted that Plaintiff had diminished memory skills but had an adequate appearance, thought process, and manner and was alert and oriented. The ALJ further noted that Dr. Marrero's notes from 2020 presented Plaintiff with depressed and anxious mood, slightly diminished memory skills, and affected attention. Tr. 33. However, according to the evidence, Plaintiff had an appropriate attitude and adequate thought process, impulse control, judgment, and insight. Id. On December 20, 2020, Dr. Marrero reported that Plaintiff was anxious and tense with marked insecurities, had pressures of speech, recollection of traumatic experiences, and re-experiences symptoms. Tr. 33, 974. Dr. Marrero evaluated Plaintiff two days later and noted that he was feeling depressed and anxious, with diminished memory skills and affected attention. Tr. 975. However, Plaintiff had an appropriate attitude and

adequate thought process. Tr. 974-75. The ALJ also considered Dr. Marrero's notes from March to May 2021 which showed that Plaintiff had a stable mental condition. Tr. 33

In his decision, the ALJ further discussed the opinion of consultative examiner Dr. Laura Colón-Negrón, a clinical psychologist who evaluated Plaintiff in October 2018.[5] Tr. 32, 203-208. Dr. Colón-Negrón opined that Plaintiff presented sad and anxious mood and affect. However, according to the evidence, Plaintiff had a cooperative and appropriate attitude, adequate psychomotor activity, logic, coherent, and relevant thought process, full orientation, and adequate memory skills except for short-term memory. Tr. 204-07. Dr. Colón-Negrón diagnosed Plaintiff with moderate recurrent major depressive disorder and a non-specific anxiety disorder. Tr. 208. Her prognosis was reserved, as Plaintiff presented adequate attention, concentration, memory, social judgment, and interpersonal abilities. Tr. 208. Plaintiff was able to manage funds, however he presented difficulties in tolerating stress and in his ability to adapt. Id. The ALJ found Dr. Colón-Negrón's opinion persuasive given that it was consistent with evidence in the record which demonstrated Plaintiff's moderate limitation in social functioning. Tr. 34.

The ALJ also accounted for Plaintiff's three partial psychiatric hospitalizations during November 2019 and March 2021. Tr. 33-34. The ALJ noted that, despite being hospitalized due to exacerbated depressive symptoms, Plaintiff's mental condition had promptly improved, and he was discharged alert, active, logic, coherent, relevant, and with no suicide idealizations. Tr. 33. The ALJ further discussed the opinion of State Agency Dr. Sydnia Rosado who opined that Plaintiff was mildly limited in all four Paragraph B criteria. Tr. 35, 1200-01. The ALJ, however, was unpersuaded by Dr. Rosado's assessment because the ALJ understood that the record demonstrated that Plaintiff suffered from a severe mental condition that required, at least, a moderate limitation finding in all four Paragraph B criteria. Tr. 35. In fact, the ALJ determined that Plaintiff had moderate limitations in (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing himself. Tr. 27.

---

[5] Plaintiff suggests that the ALJ could not rely on Dr. Colón-Negrón's report because it was issued in October 2018, before Plaintiff's partial psychiatric hospitalizations. Docket No. 15 at p. 22. However, the ALJ did not solely rely on Dr. Colón-Negrón's opinion to assess Plaintiff's mental functioning and the evidence in the record did not reveal inconsistencies between Dr. Colón-Negrón's and additional evidence of Plaintiff's mental health treatments. See e.g., Giandomenico v. U.S. Soc. Sec. Admin., Acting Comm'r, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017) ("A record is not 'significantly incomplete,' however, based merely on the fact that time has passed since the consultant's review and an incidental update in the claimant's condition has since occurred.").

Additionally, the ALJ accounted for Plaintiff's self-assessment Function Report. Tr. 27 (ref. to Tr. 85-93). Plaintiff stated that he did not need reminders regarding his hygiene and grooming and taking medications. Tr. 87. Although he stated that he did not prepare his own meals, he described that it took him about two hours to do so. Id. He also explained that he leaves his house as necessary and can drive a car. Tr. 88. Plaintiff can pay his bills, handle his bank accounts, attend medical appointments, and do grocery shopping. Tr. 88-89. Plaintiff further stated that he goes to church once a week, interacts with family and neighbors two to three times per week, and has no problems getting along with family, friends, and neighbors. Tr. 89-90. Plaintiff also noted that he is able to follow written and oral instructions. Tr. 90.

Plaintiff contends that the ALJ "cherry picked" statements from Dr. Castaing-Lespier's and Dr. Marrero's progress notes. Docket No. 15 at p. 22. The Court disagrees. As explained above, the ALJ considered all the evidence before him and incorporated limitations to the RFC that were supported by the evidence in the record. Moreover, neither doctor provided a statement regarding what Plaintiff could do despite his limitations.[6] 20 C.F.R. § 404.1513(a)(2). Lastly, Plaintiff avers that the ALJ should have requested additional medical expert opinions given Plaintiff's "mental health regression which merited partial psychiatric hospitalization." Docket No. 15 at pp. 22-23. The ALJ, however, has discretion in deciding whether to supplement the record or not. See Velásquez v. Comm'r of Soc. Sec., 2022 WL 970030, at *8-9 (D.P.R. Mar. 31, 2022) (discussing when the ALJ must obtain additional medical expert evidence pursuant to HALLEX § I-2-5-34-(A)(1)).

In sum, the ALJ's determination that Plaintiff could perform simple work-related decisions and could frequently interact with supervisors and coworkers and occasionally with the public was supported by substantial evidence. The ALJ accounted for limitations given Plaintiff's anxiety to interact with others, his nervousness in dealing with the public, his diminished memory skills, and his limited concentration caused by pain. The progress notes throughout the extensive record show that, although Plaintiff was depressed and anxious, he was alert and present with full orientation, adequate impulse control, and coherent, logical, and relevant thought process. He was cooperative, calm, and well groomed. Despite being hospitalized for emotional reasons, Plaintiff was discharged alert, active, coherent and without suicidal or homicidal ideas. Even when the record

---

[6] The only hint as to Plaintiff's ability to perform mental demands of work activities was in Dr. Marrero's December 20, 2020 progress note which indicated that Plaintiff's work prognosis was "uncertain." Tr. 974.

could justify a different outcome, the Court must uphold the ALJ's decision if it is supported by substantial evidence. Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). The ALJ's RFC stands because he considered evidence of Plaintiff's mental health.

## IV.   Conclusion

The ALJ evaluated the record as a whole and his decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of March 2024.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge